# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

KARL B. MANUEL,                         )
                                        )
                Plaintiff,              )
                                        )
        v.                              )        Civ. No. 09-047-SLR
                                        )
MICHAEL J. ASTRUE,                      )
Commissioner of Social Security,        )
                                        )
                Defendant.              )

---

David J. Lyons, Esquire, of The Lyons Law Firm, Wilmington, Delaware.  Attorney for Plaintiff.

Dina White Griffin, Esquire, of the Social Security Administration, Philadelphia, Pennsylvania. Attorney for Defendant.

---

## MEMORANDUM OPINION

Dated: March 24 , 2010
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Karl B. Manuel ("plaintiff") appeals from a decision of Michael J. Astrue, the Commissioner of Social Security ("defendant"), denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-83. Plaintiff has filed a motion for summary judgment asking the court to reverse defendant's decision and remand the case to the Commissioner with instructions to award benefits or, alternatively, for further proceedings. (D.I. 17) Defendant has filed a cross-motion for summary judgment requesting the court to affirm his decision and enter judgment in his favor. (D.I. 20) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).

## II. BACKGROUND

### A. Procedural History

Plaintiff filed an application for DIB and SSI on April 26, 2006 alleging disability since October 11, 2005 due to "lower back problems and right knee problems." (D.I. 13 at 119, 124, 160) Plaintiff was 42 years old on the onset date of his alleged disability. (*Id.* at 18) Defendant denied plaintiff's application on September 29, 2006 and, upon reconsideration, on May 17, 2007. (*Id.* at 10) Plaintiff requested a hearing which was held before an administrative law judge ("ALJ") on February 12, 2008. (*Id.* at 38) At the hearing, plaintiff (with the assistance of counsel) and his half brother testified as to plaintiff's condition. (*Id.* at 43, 71) In addition, Deana Levits, an impartial Vocational Expert ("VE"), was present at the hearing and also testified. (*Id.* at 74)

On May 4, 2008, the ALJ decided that plaintiff is not disabled within the meaning

of the Social Security Act, specifically, that plaintiff can perform other work that exists in

the national economy. (*Id.* at 37)  The ALJ's decision became final on November 20,

2008 after the Appeals Council denied plaintiff's request to review the hearing decision.

(*Id.* at 1)  On January 21, 2009, plaintiff brought the current action for review of the final

decision denying him DIB and SSI. (D.I. 2)

**B. Non-Medical History**

Plaintiff is currently 47 years old.  He has a GED and is able to read, write, and

perform simple math. (D.I. 13 at 44)  Although plaintiff was employed through 2005, his

employment never reached the level of substantial gainful activity and, therefore, does

not constitute past relevant work. (*Id.* at 36)  Plaintiff stopped working in October 2005,

after an accident which he claims caused his alleged disability.[1] (*Id.* at 45)  Since that

time, he attempted once to return to work, but was unsuccessful. (*Id.* at 46)

**C. Medical History**

Plaintiff initially consulted with Dr. Patrick W. Ward, D.C., a chiropractor, on

October 13, 2005 for his neck and lower back pain. (*Id.* at 279-86)  Dr. Ward

recommended that plaintiff undergo "conservative chiropractic spinal correction [and]

chiropractic physical therapy." (*Id.* at 281)  Plaintiff continued to see Dr. Ward almost

daily that month for his treatment. (*Id.* at 268-78)  It was not until October 26, 2005 that

he began complaining of right leg and arm numbness and severe headaches, in

addition to his back and neck pain. (*Id.* at 270)  Treatment records indicate that in the

---

[1] On October 11, 2005, plaintiff was a passenger on a bus when it struck another
vehicle. (D.I. 13 at 279, 282)  Plaintiff was not treated at the scene, but went to the
hospital later that day complaining of back and neck pain. (*Id.* at 305)

2

following months, plaintiff continued to complain of back, neck, and leg pain that fluctuated in severity: either staying the same, slightly improving, or becoming worse. (*Id.* at 212-78)  Dr. Ward ordered an MRI of the lumbar spine, which was taken on January 13, 2006.  (*Id.* at 288-89)  The results showed a "[l]eft forminal disc protrusion at L3-4 which abuts the exiting L3 nerve root" and "[d]iffuse spondylosis deformans with a small and subtle left disc protrusion at L2-3 which minimally narrows the left lateral recess and neural foramen."  (*Id.*)  Dr. Ward subsequently prescribed plaintiff a cane in March 2006.  (*Id.* at 199)

An MRI of plaintiff's right knee, completed on March 31, 2006, indicated degenerative changes, synovial joint effusion, Baker's cyst, Grade II chondromalacia patella of the apex, and intraarticular loose body posterolaterally.  (*Id.* at 287)  From October 11, 2005 to March 31, 2006, Dr. Ward described plaintiff as "totally incapacitated," "due to injuries sustained in an accident."  (*Id.* at 198, 200-06, 208-09)  Dr. Ward provided treatment for plaintiff's pain until April 26, 2006.  (*Id.* at 212)

On May 23, 2006, plaintiff underwent an operation on his right knee.  (*Id.* at 312-13)  At a follow-up appointment, his surgeon, Dr. Mohammad Kamali, found that plaintiff was "[d]oing very well" and "walks well."  (*Id.* at 314)  The following month, plaintiff was examined by Dr. Bikash Bose, a neurosurgeon.  (*Id.* at 316-22)  His examination of plaintiff revealed restriction of "left lateral rotation," a positive straight leg raising test, and the ability to walk on his heels and toes "without any significant aggravation of his symptoms."  (*Id.* at 317-18)  Dr. Bose advised plaintiff to resume physical therapy and to have cervical MRI and spine x-rays completed.  (*Id.*)  The

3

record does not indicate that plaintiff returned to see Dr. Bose.

Plaintiff also consulted Dr. Matthew J. Eppley of Delaware Neurosurgical Group, P.A. the following year. (*Id.* at 335-36)  Upon examination, Dr. Eppley noted that plaintiff had "normal strength in his lower extremities" but also "[s]ome decreased sensation over the right anterior shin worsening with bending." (*Id.*)  He also reviewed the lumbar and cervical MRI's taken on December 4, 2006, which indicated "significant spondylosis at L5-S1 with a bulge of the disc off to the right and significant neuroforaminal narrowing at L5-S1 compression of the L5 nerve root," and "some mild osteophytic formation and neuroforaminal narrowing at the C3-C4 and a very small bulge at C6-C7." (*Id.*)  Dr. Eppley recommended conservative treatments and epidural steroid injections, and referred plaintiff to Dr. Peter M. Witherell for the administration of the injection, which occurred on January 18, 2007. (*Id.* at 336, 343)

### D. Medical Opinions Regarding Residual Function Capacity

Dr. M. H. Borek, a medical consultant with the Disability Determination Service, issued his case analysis on July 23, 2006 and a Physical Residual Functional Capacity Assessment ("Physical RFC") on September 26, 2006. (*Id.* at 323-31)  Dr. Borek opined that plaintiff could lift or carry 10 pounds frequently, stand and/or walk at least 2 hours and sit 6 hours in an 8-hour workday, and could push and pull on an unlimited basis. (*Id.* at 326).  He further noted that plaintiff could occasionally climb, stoop, kneel, crouch, and craw, but never balance. (*Id.* at 327)  No manipulative, visual, or communicative limitations were found. (*Id.* at 327-38)  Dr. Borek's report advised that plaintiff should avoid concentrated exposure to extreme cold, vibration, and hazards.

4

(*Id.* at 328) He concluded that the severity of plaintiff's symptoms were partially consistent with the medical and non-medical evidence, but did not support the cane use. (*Id.* at 330) The Physical RFC was reviewed and affirmed on November 1, 2006 and again May 15, 2007. (*Id.* at 332, 339)

Plaintiff's primary care physician, Dr. Caren Thompson, submitted a "medical certification" on October 18, 2007 noting that plaintiff's back and knee pain would continue beyond 12 months and prevented him from performing his usual occupation. (*Id.* at 342) Dr. Thompson, however, also indicated that plaintiff could, and was permitted, to perform other work on a full time basis and was capable of caring for himself. (*Id.*)

### E. Hearing Before ALJ

Plaintiff testified that he stopped working in 2005 after the accident. (*Id.* at 45) After his unsuccessful attempt to return to work in 2007, plaintiff discontinued seeking employment. (*Id.* at 46) He enrolled in Nehemiah Gateway Career Training Center, but because he had to constantly stand and walk, which disturbed the other students, he was asked to leave. (*Id.* at 48)

Plaintiff testified that he suffers severe pain in his lower back and right knee, for which he currently takes Percocet, Flexeril, Soma, and Ibuprofen daily. (*Id.* at 48, 50) According to plaintiff, those medications cause dizziness and impair his concentration. (*Id.* at 58, 60) Despite the treatment for the past two years, plaintiff claimed that the severity of his pain remains the same. (*Id.* at 51-52) In addition, he testified that the knee surgery in 2006 did not improve that condition. (*Id.* at 53-54)

5

Plaintiff stated that he can walk, stand, or sit for limited increments of approximately 20 minutes, but has difficulty sitting and standing for longer periods. (*Id.* at 59-60) He claimed that he can only lift three to five pounds. (*Id.* at 60) Plaintiff admitted that he can bend, kneel, and stoop with limitations, but did not elucidate on what those restrictions are. (*Id.*) He also noted problems with sleeping, requiring him to nap during the day.[2] (*Id.* at 61, 65) Plaintiff, however, is capable of caring for himself, including cooking and vacuuming periodically. (*Id.* at 62) His daily activities include playing chess and video games. (*Id.* at 63)

In addition to his back and knee pain, plaintiff began seeing a doctor for depression, caused by his financial situation. (*Id.* at 57-58) At the time of the hearing, he was only receiving counseling and planned to return for further treatment. (*Id.* at 57-58) He also testified that he suffers from asthma, for which he takes Advair and Albuterol. (*Id.* at 61) Generally, his asthma is problematic only when the weather is hot. (*Id.*)

Plaintiff's brother also testified at the hearing. (*Id.* at 72) He explained that plaintiff has become very dependent since the accident, which created problems between the two. (*Id.*) He related that plaintiff appeared depressed. (*Id.* at 73)

After the presentation of plaintiff's evidence, the ALJ asked the VE whether a hypothetical individual who was 42 years old and had a high school education but no work history, could perform simple, unskilled work that did not involve climbing a ladder, rope, or scaffold or concentrated exposure to cold, vibration, and hazards. (*Id.* at 75)

---

[2] Plaintiff stated that he gets only four to five hours of sleep at night and then naps about two or three hours during the day. (*Id.* at 61, 65)

6

In response, the VE offered six possible occupations: pre-assembler for printed circuit boards; mail clerk, but not with the post office; counter clerk; taper for printed circuit boards; order clerk; and addresser. (*Id.*) She stated that termination would likely result if an individual was not productive 15 to 20 percent of the time; however, based on her personal observations in the field, those occupations typically allow one to sit/stand at will. (*Id.* at 77-78)

## III. STANDARD OF REVIEW

Findings of fact made by the ALJ, as adopted by the Appeals Council, are conclusive, if they are supported by substantial evidence. Accordingly, judicial review of the ALJ's decision is limited to determining whether "substantial evidence" supports the decision. *See Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). In making this determination, a reviewing court may not undertake a de novo review of the ALJ's decision and may not re-weigh the evidence of record. *See id.* In other words, even if the reviewing court would have decided the case differently, the ALJ's decision must be affirmed if it is supported by substantial evidence. *See id.* at 1190-91.

The term "substantial evidence" is defined as less than a preponderance of the evidence, but more than a mere scintilla of evidence. As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The Supreme Court also has embraced this standard as appropriate for deciding summary judgment pursuant to Federal Rule of Civil Procedure 56. Under that

7

standard, the threshold inquiry is whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), "which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986) (internal citations omitted). Thus, in the context of judicial review under § 405(g), "[a] single piece of evidence will not satisfy the substantiality test if [the ALJ] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if is overwhelmed by other evidence–particularly certain types of evidence (e.g., that offered by treating physicians)–or if it really constitutes not evidence but mere conclusion." See Brewster v. Heckler, 786 F.2d 581, 584 (3d Cir. 1986) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). Where, for example, the countervailing evidence consists primarily of the plaintiff's subjective complaints of disabling pain, the ALJ "must consider the subjective pain and specify his reasons for rejecting these claims and support his conclusion with medical evidence in the record." Matullo v. Bowen, 926 F.2d 240, 245 (3d Cir. 1990).

## IV. DISCUSSION

### A. Regulatory Framework

Social Security Administration regulations incorporate a sequential evaluation

process for determining whether a claimant is under a disability. 20 C.F.R. § 404.1520. The ALJ first considers whether the claimant is currently engaged in substantial gainful activity. If he is not, then the ALJ considers, in the second step, whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities. If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of an impairment contained in the "listing of impairments," 20 C.F.R. pt. 404, subpt. P, app. 1 (1991), which result in a presumption of disability, or whether the claimant retains the capacity to work. If the impairment does not meet the criteria for a listed impairment, then the ALJ assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform his past work. If the claimant cannot perform his past work, then step five is to determine whether there is other work in the national economy which the claimant can perform. *Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000) (citing 20 C.F.R. § 404.1520). If the ALJ finds that a claimant is disabled or not disabled at any point in the sequence, review does not proceed to the next step. 20 C.F.R. § 404.1520(a). It is within the ALJ's sole discretion to determine whether an individual is disabled or "unable to work" under the statutory definition. 20 C.F.R. § 404.1527(e)(1).

The ALJ is required to evaluate all of the medical findings and other evidence which supports a physician's statement that an individual is disabled. The opinion of a treating or primary physician is generally given controlling weight when evaluating the nature and severity of an individual's impairments. However, no special significance is given to the source of an opinion on other issues which are reserved to the ALJ, such

9

as the ultimate determination of disablement.  20 C.F.R. §§ 404.1257(e)(2) &

404.1527(e)(3).  The ALJ has the discretion to weigh any conflicting evidence in the

case record and make a determination.  20 C.F.R. § 404.1527(c)(2).

### B. The ALJ's Decision

The ALJ considered the medical evidence of record and testimony during the

hearing, and concluded that plaintiff retains the capacity for work and is not disabled as

defined by the Social Security Act.  The ALJ made the following enumerated findings.

> 1.  The claimant meets the insured status requirements of the Social
> Security Act through December 31, 2010.
>
> 2.  The claimant has not engaged in substantial gainful activity since
> October 11, 2005, the alleged onset date (20 C.F.R. §§ 404.1520(b),
> 404.1571, *et seq.*, 416.920(b) and 416.971, *et seq.*).
>
> 3.  The claimant has the following severe impairments: Degenerative Disc
> Disease of the Lumbar Spine, and Degenerative Joint Disease of the
> Right Knee (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

Additionally, the ALJ determined that plaintiff's asthma and depression were

"non-severe" because those impairments caused only "minimal functional limitations."

(*Id.* at 29)  Regarding his asthma condition, plaintiff "testified that his asthma is

generally controlled with medication, and he only has problems in the heat."  (*Id.*)  The

ALJ also noted that plaintiff's depression fails to severely impact any of "the four broad

functional areas set out in the disability regulations for evaluating mental disorders," or

"paragraph B" criteria.  (*Id.*)

> 4.  The claimant does not have an impairment or combination of
> impairments that meets or medically equals one of the listed impairments
> in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d),
> 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

The ALJ reviewed sections 1.02, 1.04, and 1.00B2b of 20 C.F.R. part 404, Appendix 1 related to the musculoskeletal system. (*Id.* at 30)  She concluded that plaintiff's conditions "do not satisfy the requisite neurological, laboratory, clinical and/or diagnostic requirements for listing level severity . . . nor does [plaintiff] have an inability to effectively ambulate . . . ." (*Id.*)

> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a); however, the claimant is also limited to occasional postural limitations, as well as never climbing on ladders, ropes, or scaffolds; and should avoid concentrated exposure to extreme cold, vibrations and hazards.

In this regard, the ALJ had to determine "whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms," and then "determine the extent to which they limit the claimant's ability to do basic work activities." (*Id.* at 30-31) Although concluding that the "impairments could reasonably be expected to produce the alleged symptoms," the ALJ found that the medical record did not support the severity plaintiff asserted. (*Id.* at 33-36)

> 6. The claimant has no past relevant work (20 C.F.R. §§ 404.1565 and 416.965).
>
> 7. The claimant was born on November 13, 1962 and was 42 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date, and is currently a younger individual age 45-49 (20 C.F.R. §§ 404.1563 and 416.963).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).
>
> 9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 C.F.R. §§ 404.1568 and 416.968).

11

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from October 11, 2005, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

## C. Analysis

Plaintiff argues that the ALJ's determination was not based upon substantial evidence because it: (1) dismissed his credibility without cause; (2) did not adequately consider or properly weigh the objective medical evidence; and (3) improperly relied on the VE's testimony.  The court addresses these arguments in turn.

### 1. Plaintiff's credibility

Plaintiff contends that the ALJ improperly dismissed his statements regarding his pain and medication side effects as insignificant or not credible.  He also states that, contrary to the ALJ's decision, his symptoms are supported by the medical evidence.  When evaluating a claimant's symptoms, the ALJ must first determine whether there is "a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged."  20 C.F.R. § 404.1529(a).  The ALJ must then evaluate the intensity and persistence of the pain, in light of all the evidence, and the extent to which the symptoms affect the claimant's ability to be employed.  *Id.*; *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).  "Allegations of pain and other subjective symptoms must be supported by objective medical evidence."  *Hartranft*, 181 F.3d at 362 (citing 20 C.F.R. § 404.1529).

In the present matter, the ALJ provided an extensive review of the plaintiff's

12

symptoms and concluded that "[plaintiff's] impairments could reasonably be expected to produce the alleged symptoms." (D.I. 13 at 31) However, the ALJ found plaintiff's claims regarding the intensity and persistence of the pain "not credible" because they are "inconsistent with the residual functional capacity assessment." (*Id.*) The ALJ's decision goes on to list the specific inconsistencies. First, the emergency records, completed a few hours after the accident, show plaintiff was diagnosed with "neck and lumbar strain," but indicate "no CVA or vertebral tenderness, [a] full range of motion and normal sensation." (*Id.* at 31-32) In the following months, treatment notes from Dr. Ward show that plaintiff's condition was improving. (*Id.* at 32) After undergoing surgery on his right knee, plaintiff's surgeon observed that he was walking well. (*Id.*) Two neurosurgeons who treated plaintiff recommended either physical therapy or conservative treatment, but there is no documentation of plaintiff following up on either recommendation. (*Id.* at 33) In addition, surgery has not been recommended. Plaintiff's medical records end after January 2007. (*Id.*)

There is clearly substantial evidence to support the ALJ's opinion to discredit plaintiff's complaints. On May 23, 2006, plaintiff underwent arthroscopy of the right knee. (*Id.* at 312-13) Dr. Kamali saw plaintiff again the next week and noted that plaintiff was walking well. (*Id.* at 314) A few months later, Dr. Borek disputed whether plaintiff required a cane, stating that the medical and non-medical evidence did not support its use. (*Id.* at 330) With respect to his back pain, plaintiff's symptoms appear to change. A review of Dr. Ward's treatment notes from October 2005 to April 2006 indicates that plaintiff's pain improved some days while becoming worse on other days.

13

(*Id.* at 212-78)  In addition, the medical certification completed by Dr. Thompson, plaintiff's primary physician, specifically notes that plaintiff can perform other work on a full time basis. (*Id.* at 342)

### 2. Weight of objective medical evidence

Plaintiff argues that the objective medical evidence supports a finding that he is disabled.  He cites the positive straight leg raising test by Dr. Bose, the lumbar and cervical MRI results recited by Dr. Eppley, and the epidural injection he received from Dr. Witherall.  When a finding for disability is unfavorable to the claimant, 20 C.F.R. §§ 404.1527 and 416.927 require that the decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion . . . ."  SSR 96-2P.

The ALJ's determination includes an extensive overview of each treating physician's findings and conclusions.  (D.I. 13 at 31-33)  After thoroughly reviewing the medical evidence, the ALJ admitted that "the various physicians noted some negative objective findings concerning the claimant's back and knee." (*Id.* at 33)  However, there were "no significant motor, sensory or neurological deficits that would preclude the claimant from all physical activities." (*Id.*)  In two years, plaintiff "has only been treated conservatively" and "[n]o surgery has been recommended . . . ." (*Id.*)  Therefore, the ALJ concluded that plaintiff's claims were "overstated, inconsistent with, and unsupported by, the great weight of the documentary medical evidence." (*Id.*)

The court finds that the ALJ properly weighed the medical evidence and gave

14

sufficient reasons for her decision. The ALJ noted that chiropractors are not recognized as acceptable medical sources under the code. (*Id.* at 34); *see Hartranft*, 181 F.3d at 361 ("a chiropractor's opinion is not 'an acceptable medical source' entitled to controlling weight"). Thus, Dr. Ward's opinion is given little weight. On the other hand, the ALJ gave greater weight to the Dr. Borek's case review and Physical RFC because it was consistent with the objective medical evidence. (D.I. 13 at 35); *see* SSR 96-6P (the ALJ "must evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant"). Finally, the ALJ correctly stated that Dr. Thompson's opinion in the form of a medical certification was not binding on the Social Security Administration. (D.I. 13 at 34) A treating physician's opinion that a claimant is disabled "can never be entitled to controlling weight or given specific significance," but the determination "must explain the consideration given." SSR 96-5P. In this matter, the ALJ stated that she did give some weight to the portions of Dr. Thompson's opinion which were consistent with and supported by the objective evidence. (D.I. 13 at 34) Thus, the ALJ properly weighed the medical evidence and gave reasons for her determination in accordance with 20 C.F.R. §§ 404.1527 and 416.927.

### 3. Adequacy of the VE's testimony

Plaintiff also attacks the VE's testimony on the basis that the occupations listed fail to have a "sit/stand option" which is necessary for him to work. "'[T]he vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the [hypothetical] question accurately portrays the claimant's individual physical and mental

impairments.'" *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002) (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)). Only those impairments and limitations "medically established" by the record need to be included in the hypothetical. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). If, however, the hypothetical does not properly phrase the claimant's impairments and limitations, the VE's testimony cannot be considered substantial evidence. *Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004).

The ALJ asked the VE whether there were any light or sedentary simple, un-skilled jobs which an individual of plaintiff's age, education, work experience, and RFC could perform. (D.I. 13 at 75) The hypothetical did not mention a sit/stand requirement. The VE provided six occupations which she opined could be performed by that individual.[3] (*Id.*) During cross-examination, the VE explained that, based on her own observations, the option to sit and stand is allowed by most employers in these fields so long as it does not impede the employee's productivity. (*Id.* at 77-78) However, the VE admitted that the Dictionary of Occupational Titles does not specifically address this option. (*Id.* at 80)

Since the hypothetical sufficiently described all of plaintiff's medically determinable impairments, the court finds that the VE's testimony is substantial evidence of plaintiff's ability to work. In over a year's worth of medical evidence, not a single physician indicated that plaintiff had difficulty sitting for an extended period of time. The only indication that plaintiff requires a sit/stand option is from plaintiff's own

---

[3] The VE listed the following positions: pre-assembler for printed circuit boards, mail clerk, counter clerk, taper for printed circuit boards, order clerk with food and beverage, and addresser. (D.I. 13 at 75)

16

testimony.  First, he mentions leaving the Nehemiah Gateway Career Training Center because he disturbed the other students when he would constantly get up to walk.  (*Id.* at 46)  He also requested to stand a few times during his one-hour hearing before the ALJ.  (*Id.* at 47, 66)  However, plaintiff has only attempted to go back to work once and it was in a position that required him to lift and load large items into a truck.  (*Id.* at 46)  The six occupations described by the VE do not mandate that type of manual labor.  The record also indicates that plaintiff may benefit from continuing physical therapy and conservative treatment as recommended by his neurosurgeons.  (*Id.* at 316-22, 335-36)

## V. CONCLUSION

In view of the foregoing, substantial evidence supports the ALJ's determination that plaintiff is not disabled and is capable of doing sedentary work.  Plaintiff's motion for summary judgment (D.I. 17), therefore, is denied and defendant's motion for summary judgment (D.I. 20) is granted.  An appropriate order shall issue.